

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **In re:** EQUIPMENT FINDERS, INC. OF TENNESSEE, | Case No. 3:09-bk-10426 |
| | Chapter 11 |
| *Reorganized Debtor.* | Hon. Keith M. Lundin |
| EQUIPMENT FINDERS INC. OF TENNESSEE, | |
| *Plaintiff,* | |
| *v.* | Adv. No. 3:11-ap-00252 |
| FIREMAN'S FUND INSURANCE CO. AND COMMERCIAL INSURANCE ASSOCIATES, LLC, | |
| *Defendant*s. | Hon. Keith M. Lundin |

## ORDER

For the reasons stated in the memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DECREED that the adversary proceeding is DISMISSED.

IT IS SO ORDERED.

*This order was signed and entered electronically as indicated at the top of this page.*

# In the United States Bankruptcy Court
## For the Middle District of Tennessee

In re:  Equipment Finders, Inc. of Tennessee,

*Reorganized Debtor.*

---

Equipment Finders Inc. of Tennessee,

*Plaintiff,*

*v.*

Fireman's Fund Insurance Co. and Commercial Insurance Associates, LLC,

*Defendant*s.

Case No. 3:09-bk-10426
Chapter 11

Hon. Keith M. Lundin

Adv. No.  3:11-ap-00252

Hon. Keith M. Lundin

## Appearances

William L Norton, III
Bradley Arant Boult Cummings LLP
PO Box 340025
1600 Division St., Ste. 700
Nashville, TN 37203
615 252-2397
Fax : 615-252-6397
Email: bnorton@babc.com
ATTORNEY FOR EQUIPMENT FINDERS INC. OF TENNESSEE

Gregory P. Varga
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103
860-275-8200
Fax : 860-275-8299
Email: gvarga@rc.com
ATTORNEY FOR FIREMAN'S FUND INSURANCE COMPANY

W. Neal McBrayer
Miller & Martin PLLC
150 4th Ave N Ste 1200
Nashville, TN 37219
615 244-9270
Fax : 615-256-8197
Email: nmcbrayer@millermartin.com
ATTORNEY FOR FIREMAN'S FUND INSURANCE COMPANY

Melissa Bradford Muller
Howard, Tate, Sowell, Wilson, Leathers & Johnson
150 Second Avenue North, Ste. 201
Nashville, TN 37201
615-256-1125
Fax : 615-244-5467
Email: mbmuller@howardtatelaw.com
ATTORNEY FOR COMMERCIAL INSURANCE ASSOCIATES, LLC

THE HONORABLE KEITH M. LUNDIN
CHIEF JUDGE, U.S. BANKRUPTCY COURT

2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

In re: EQUIPMENT FINDERS, INC. OF TENNESSEE,

**Reorganized Debtor.**

---

EQUIPMENT FINDERS INC. OF TENNESSEE,

**Plaintiff,**

**v.**

FIREMAN'S FUND INSURANCE CO. AND COMMERCIAL INSURANCE ASSOCIATES, LLC,

**Defendants.**

Case No. 3:09-bk-10426
Chapter 11

Hon. Keith M. Lundin

Adv. No. 3:11-ap-00252

Hon. Keith M. Lundin

## MEMORANDUM

The issue is whether the bankruptcy court has post confirmation subject matter jurisdiction over this reorganized debtor's state law and contract actions against the defendants. Contract and state law actions against a noncreditor that were not material to plan confirmation and upon which the plan is not dependent for payments, are outside bankruptcy court jurisdiction. The following are findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

## I. FACTS

Equipment Finders Inc. of Tennessee ("EFI") rents construction equipment. The downturn in construction business that accompanied the economic recession produced a decline in EFI's

business in 2008 and 2009. EFI was unable to carry its debt and on September 11, 2009, filed Chapter 11.[1] At the petition, EFI had an inventory of approximately 700 pieces of equipment financed through eighteen banks and finance companies. Aggregate secured debt exceeded $8 million.

If shrinking construction business was not enough to distress EFI's business, on May 1-2, 2010, Nashville experienced historic flooding. EFI's main office and equipment storage locations (500 and 501 Davidson Street) on the banks of the Cumberland River ended up under water, resulting in significant damage to property and equipment. Approximately 200 pieces of equipment were damaged or destroyed by the flood. (Compl. ¶ 33.)

EFI was insured by Fireman's Fund Insurance Company. EFI promptly informed Fireman's of the flood losses. (Compl. ¶ 34.) Fireman's quickly informed EFI that its policy did not cover flood loss. (Compl. ¶ 35.) After discussion, on May 28, 2010, Fireman's agreed to cover losses at 500 Davidson Street, EFI's secondary storage location—losses that totaled approximately $635,000. (Compl. ¶¶ 36 & 37.) Fireman's denies flood coverage for any equipment losses at EFI's 501 Davidson Street location. (Compl. ¶ 42.) Thus began this dispute between EFI, Fireman's and Commercial Insurance Associates, LLC ("CIA"), the insurance agent that sourced the Fireman's coverage for EFI.

Notwithstanding additional challenges caused by the flood, EFI moved forward with a plan of reorganization. EFI's Amended Plan of Reorganization Dated August 3, 2010, with further amendments offered at the contested confirmation hearing, was confirmed on October 13, 2010.

---

[1] This was EFI's second bankruptcy. In a previous case filed on February 22, 2002, EFI confirmed a Chapter 11 plan that provided for full payment to creditors over a period of years.

2

Of some moment here, at the confirmation hearing, two objections to the Amended Plan remained unresolved. Citing the "fair and equitable" test in 11 U.S.C. § 1129(b)(2), Alter Moneta and Community First Bank & Trust, equipment financiers, challenged a provision in the Amended Plan that allowed EFI to use "proceeds from any insurance claim for damage to Property in which a creditor has a security interest to acquire replacement equipment to be used by the Reorganized Debtor in the ordinary course of its business, or . . . apply the proceeds to repayment of the Allowed Secured Claim held by that creditor." (Amended Plan, at ¶ 5.2.). EFI's president, Scott Hatcher, testified that EFI would pay all creditors in full under its Amended Plan, by extending contractual terms for payment. Mr. Hatcher explained that a considerable portion of EFI's equipment fleet—"somewhere in the neighborhood of two to $2,500,000.00 dollars worth"—was damaged by the flood, and that EFI was "beginning to, and [had] received some insurance proceeds and anticipate[d] receiving proceeds in the future." Until EFI could replace or repair the flood damaged equipment, EFI was renting equipment from other rental companies to fill its customers' needs. The result was increased operating costs to EFI.

Addressing the objections to confirmation, EFI agreed to a hearing protocol in the event of a dispute with a secured party with respect to substitution of collateral. Section 5.02 of the Amended Plan was revised to retain bankruptcy court jurisdiction to resolve substitution of collateral disputes. This protection—combined with the existing equipment replacement program of EFI—satisfied the fair and equitable component of § 1129(b)(2(A).[2]

---

[2] Section 1129(b)(2)(A) provides:

In order to be fair and equitable with respect to a class of secured claims, a plan must provide:

On April 14, 2011—six months after confirmation—reorganized EFI filed this action against Fireman's and CIA. Based on Fireman's denial of flood coverage for 501 Davidson Street, EFI asserted claims for breach of contract, reformation, negligent failure to procure insurance, negligent misrepresentation, breach of fiduciary duty and violations of the Tennessee Consumer Protect Act. EFI demanded $1.9 million in damages and trial by jury. EFI offered this jurisdictional statement: "28 U.S.C. § 1334 and 28 U.S.C. § 157 . . . [t]his action is related to this Chapter 11 case because it concerns recovery of approximately $1,100,000 in proceeds from an insurance policy, which constitutes a significant asset of the bankruptcy estate over which this Court has exclusive jurisdiction and which is important to the implementation of the Debtor's Plan of Reorganization." (Compl. ¶ 5.)

Fireman's moved to dismiss for lack of subject matter jurisdiction. Fireman's explains that all rights under the policy vested in reorganized EFI when it exited bankruptcy under its Amended Plan. EFI's bankruptcy estate ceased to exist upon confirmation and the Amended Plan declared the

---

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

   (II) that each holder of a claim of such class receive on account of such claim *496 deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A).

4

estate fully administered upon the effective date. Fireman's asserts that performance of EFI's Amended Plan does not depend upon any recovery in this action. Neither the Amended Plan nor the Disclosure Statement that accompanied the Amended Plan references this complaint. The Amended Plan provides for fixed payouts without regard to insurance proceeds or damage awards.

EFI responds that recovery of insurance proceeds was implicit to success of its plan. EFI cites testimony of Mr. Hatcher that he believed the flood losses were covered by insurance and that EFI depended upon insurance proceeds to replace damaged equipment. EFI points to provisions in the Amended Plan by which it retained "each and every claim, demand or cause of action"[3] and which retained bankruptcy court jurisdiction for "[d]etermination of any claims asserted by the Debtor against any other person or entity, including but not limited to any right of the Debtor to recover asserts [sic] pursuant to the provisions of Title 11." (Amended Plan, § 9.02). Relying on what it characterizes as the Sixth Circuit's approval of expansive "related to" jurisdiction in the bankruptcy courts, EFI urges that this lawsuit has more than an "'extremely tenuous connection' to the debtors rights and liabilities." EFI asserts a "close nexus" between this action and its Amended Plan.

## II.  Amended Plan, Disclosure Statement and Confirmation Order

The Amended Plan,  Disclosure Statement, and Confirmation Order included the following provisions.

---

[3] *See* 11 U.S.C. § 1123(b)(3)(B), discussed in *Elk Horn Coal Co. v. Conveyor Manufacturing & Supply, Inc. (In re Pen Holdings, Inc.)*, 316 B.R. 495 (Bankr. M.D. Tenn. 2004).

5

## A. Amended Plan

> **2.15** "<u>Effective Date of the Plan</u>" shall mean the later of (i) the first business day of the second full month following the Confirmation, or (ii) the first business day after an appeal of an order confirming this Plan has become final and unappealable . . . .

(Amended Plan, ¶ 2.15.)

Claims were classified into 20 classes, including 15 classes of equipment financiers. With respect to each allowed secured claim, the plan proposed equal monthly installments of principal and interest commencing on the fifth day of the first month following the Effective Date. (Amended Plan, ¶ 5.01.) Alter Moneta and Community First Bank and Trust—the two equipment vendors that objected to the Amended Plan—were provided for as follows:

### Class 1—Secured Claim of Alter Moneta

> The Allowed Secured Claim of Alter Moneta shall be allowed in the amount owed as of the Date of Filing, less any adequate protection payments made by the Debtor prior to the Effective Date of the Plan. Alter Moneta will retain its lien in the same priority existing at the Date of Filing to secure its Allowed Secured Claim pursuant to the security agreement evidencing those liens.

> This Allowed Secured Claim shall be paid under the Plan as follows:
> (i) Equal month installments of principal and interest shall be made in the amount of $13,000.
> (ii) Interest shall accrue at the fixed annual rate equal to the U.S. Prime Rate (published in The Wall Street Journal as of the Confirmation Hearing) plus 2%.
> (iii) The first payment will be due on the fifth dy of the first month following the Effective Date of the Plan and subsequent payments will be due on the fifth day of each month thereafter until the Allowed Secured Claim is paid in full. Any pending adequate protection payments will continue to accrue until the Effective Date of the Plan.
> (iii) Any terms of the existing finance documents evidencing this Allowed Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan.

> \* \* \*

6

**Class 3—Secured Claim of Community First**

The Allowed Secured Claim of Community First shall be allowed in the amount owed as of the Date of Filing. Community First will retain its lien in the same priority existing at the Date of Filing to secure its Allowed Secured Claim pursuant to the security agreement evidencing those liens.

This Allowed Secured Claim shall be paid under the Plan as follows:
(i) Equal month installments of principal and interest at the Market Rate shall be made in the amount of $8,000.
(ii) The first payment will be due on the fifth dy of the first month following the Effective Date of the Plan and subsequent payments will be due on the fifth day of each month thereafter until the Allowed Secured Claim is paid in full.
(iii) Any terms of the existing finance documents evidencing this Allowed Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan.

(Plan, § 5.01, at 5-6.)

Unsecured creditors were to be paid:

(i) Allowed claims in the amount of $1,000 or less and Allowed Claims in amount greater than $1,000 for which the claimant elects to reduce its Allowed Claim to the amount of $1,000, shall be paid in full sixty days following the Effective Date of the Plan.
(ii) All other Claims shall be paid in full in ten equal annual installments, without interest. The first installment shall be due on the first anniversary of the Effective Date of the Plan, provided the Reorganized Debtor shall have the right to accelerate payment of the Class 19 Claims in full at any time provided (a) all Claims are paid pro rata and at the same time, unless a Claimant consents otherwise, and (b) the Debtor is current on all other Plan, and (c) the earnings of the Reorganized Debtor for the prior calendar year (before interest, depreciation and taxes) are greater than all of the Debtor's equipment note payments times 1.25, plus the scheduled payment to Class 19.

(Amended Plan, ¶ 5.01.)[4]

---

[4] The Amended Plan states that allowed unsecured claims "will receive pro rata distributions from the Net Operating Surplus, further described herein," (Amended Plan, at ¶ 1.02); however, neither the Amended Plan, Disclosure Statement nor Confirmation Order define or discuss "Net Operating Surplus." The Disclosure Statement states that Class 19 unsecured creditors will be paid 100%. (Discl. Stmt., V, at 5.)

7

5.02 <u>Substitution of Collateral</u>. Notwithstanding any restriction within a loan document with a creditor holding a lien in Property, the Reorganized Debtor shall have the option, in its sole discretion, to (i) use the proceeds from any insurance claim for damage to Property in which a creditor has a security interest to acquire replacement equipment, acceptable to the secured creditor, whose consent will not be unreasonable withheld, to be used by the Reorganized Debtor in the ordinary course of its business, or (ii) apply the proceeds to the payment of the Allowed Secured Claim held by that creditor. . . . The Reorganized Debtor shall not spend insurance proceeds until obtaining the written consent of the secured creditor, whose consent will not be unreasonably withheld. If an agreement is not reached between the Reorganized Debtor and the creditor, the Court retains jurisdiction to resolve any such disputes. (As amended by First Amendments filed Oct. 12, 2010.)

6.02 <u>Early Payment</u>. Nothing herein shall prohibit the Reorganized Debtor from making an early payment of an Allowed Secured Claim, provided the funds used to pay that Claim will not cause a reduction of the distributions to the Unsecured Claims either in timing or amount.

* * *

8.01 <u>Continuation of Debtor's Operations</u>. Until the case is closed, the Debtor will continue to remain in possession of all Property pursuant to § 1108 and shall continue to pay U.S. Trustee fees as required.

8.02 <u>Transfer of Assets</u>. As of the Effective Date of the Plan and except as otherwise provided herein, all Property of the Debtor will be retained by Equipment Finders Inc. Of Tennessee as the Reorganized Debtor free and clear of all claims.

* * *

9.05 <u>Closing of Case</u>. After the Effective Date of the Plan and the commencement of payment to secured claims, the estate will be deemed to be fully administered and the Debtor may close the Case upon the filing of a final accounting and a motion for final decree as required under Bankruptcy Rule 3022.

9.06 <u>Continuing Jurisdiction of the Court</u>. Notwithstanding the entry of a final decree, the Court shall retain jurisdiction to the extent allowed by law, which shall include jurisdiction over the following matters:

(a) The determination of such objections as may be filed to claims or interests, and the re-examination of the allowance of any claims or interests.

8

(b) The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

[sic]

(d) Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and the Reorganized Debtor, and to impose such limitations and terms of such title, rights and powers as the Court may deem necessary.

(e) Determination of any claims asserted by any Debtor against any other person or entitiy, including but not limited to any right of any Debtor to recover assets pursuant to the provisions of Title11 which are retained pursuant to 9.02 herein.

(f) Entry of a final decree closing this Case or an order regarding the Debtor'[s] discharge under § 1141(d)(5)(C).

(Amended Plan, at 15-17.)

## B. Disclosure Statement

The Disclosure Statement that accompanied the Amended Plan does not mention the flood, any potential dispute with Fireman's over flood coverage, the possibility that damaged equipment might not be covered or that damaged equipment might limit EFI's business going forward. Under summary of liabilities, the Disclosure Statement provided:

The Debtor has equipment financing obligations totaling approximately $8.2 million as of the date of the filing. The Debtor believes that this debt is fully secured with marginal equity. As of the filing of this Disclosure Statement, the Debtor is not aware of any reason to challenge or seek avoidance of any security interest asserted by any of the equipment vendors, but reserves the right to do so if it becomes aware of a defect in the perfection of a security interest.

(Discl. Stmt., IV. A. 3.).

The section entitled Liquidation Analysis, references a hypothetical trustee's power to pursue avoidance actions but no specific cause of action is identified and Fireman's is not mentioned. (Disc. Stmt. V, at 5.) Delineating property that would be available to a trustee in a liquidation, the

9

Disclosure Statement provides: "[t]here are three categories of assets of value in a liquidation of the Debtor—the real property, the equipment and the accounts receivable. . . . [I]t is the Debtor's belief that most of the equipment vendors are marginally secured, particularly in a liquidation, thus leaving no value to the unsecured creditors if that equipment were sold." (Disc. Stmt. V, at 5.)

## C. Confirmation Order

With respect to retention of jurisdiction in the bankruptcy court the Confirmation Order also provided:

> [T]o the extent needed, this Court will retain jurisdiction in order to implement the Plan pursuant to 11 U.S.C. § 1142 or as otherwise permitted by law, including determination as to whether creditors are acting reasonably in refusing to agree to the replacement of collateral with insurance proceeds as set forth in section 5.02 of the Plan.

(Conf. Order at ¶¶ 1-2.)

## III. DISCUSSION

## A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the . . . court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004), *cert. denied*, 544 U .S. 961, 125 S. Ct. 1733, 161 L. Ed. 2d 603 (2005).

10

Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties. A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. On the other hand, when a court reviews a complaint under a factual attack, . . ., no presumptive truthfulness applies to the factual allegations. Such a factual attack on subject matter jurisdiction commonly has been referred to as a "speaking motion." When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. In reviewing these speaking motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts.

*Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990) (citations omitted). *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) ("A facial attack is a challenge to the sufficiency of the pleading itself. . . . A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction.").

The jurisdictional challenge here is a factual attack. It is appropriate to review relevant evidence, including documents and testimony.

**B. Post Confirmation Subject Matter Jurisdiction**

Analysis begins with the statutory scheme because "jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995). The bankruptcy court has jurisdiction in the first instance to determine its own subject matter jurisdiction. *See, e.g.*, *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376–77, 60 S. Ct. 317, 84 L. Ed. 329 (1940) (federal court has authority to determine whether it has subject matter jurisdiction over a dispute).

Under 28 U.S.C. § 1334, district courts "have original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under

11

title 11, or arising in or related to cases until title 11." 28 U.S.C. § 1334(a) & (b).[5] 28 U.S.C. § 157

then authorizes district courts to refer cases and proceedings falling within § 1334(a) and (b) to the

bankruptcy courts. 28 U.S.C. § 157(a). While subject matter jurisdiction is determined by § 1334,

§ 157(b) and (c) determines the bankruptcy court's authority to act once jurisdiction is established.[6]

The Bankruptcy Code, Title 11, "nowhere purports to circumscribe the subject matter

jurisdiction of the bankruptcy courts in Chapter 11 cases." *Refrigerant Reclamation Corp. of Am.*

*v. Todack (In re Refrigerant Reclamation Corp. of Am.)*, 186 B.R. 78, 80 (Bankr. M.D. Tenn. 1995)

(footnote omitted). As many courts have observed, "neither the Plan nor the order confirming it can

confer subject matter jurisdiction on this Court." *Faulkner v. Eagle View Capital Management (In*

*re The Heritage Organization, L.L.C.)*, 454 B.R. 353, 359 n.3 (Bankr. N.D. Tex. 2011). *See also*

*Binder v. Price Waterhouse & Co, LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 161 (3d Cir. 2004)

("Subject matter jurisdiction 'cannot be conferred by consent' of the parties. Where a court lacks

subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of

---

[5] **§ 1334. Bankruptcy cases and proceedings**

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334.

[6] Whether a proceeding is core or non-core for purposes of 28 U.S.C. § 157 does not determine jurisdiction because "[t]hat allocation [of core and non-core] does not implicate questions of subject matter jurisdiction." *Stern v. Marshall*, ⸺ U.S. ⸺, 131 S. Ct. 2594, 2607, 180 L. Ed. 2d 475 (2011).

12

reorganization. Similarly, if a court lacks jurisdiction over a dispute, it cannot create that jurisdiction

by simply stating it has jurisdiction in a confirmation or other order.") (internal citations omitted).

As this court observed over a decade ago:

> Several reported decisions limit the post confirmation jurisdiction of the bankruptcy courts in Chapter 11 cases without proper respect for the broad jurisdictional grant in 28 U.S.C. § 1334(a) & (b). *See Hospital & University Property Damage Claimants v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993) ("A bankruptcy court retains post confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization . . . [Post confirmation jurisdiction] is defined [exclusively] by reference to the plan."); *Walnut Assocs. v. Saidel*, 164 B.R. 487, 492 (E.D. Pa.1994) ("After a plan has been confirmed, subject matter jurisdiction is specifically conferred on the bankruptcy court to resolve only post confirmation matters. . . ."); *Portfolio Lease Funding Corp., No. 1 v. Seagate Technology, Inc. ( In re Atlantic Computer Sys., Inc.)*, 163 B.R. 704 (Bankr. S.D.N.Y. 1994) (If the plan and the order confirming the plan conflict over retained jurisdiction, the plan controls.); *In re Jr. Food Mart of Ark., Inc.*, 161 B.R. 462, 463 (Bankr. E.D. Ark.1993) ("The Bankruptcy Code [i.e., 11 U.S.C. § 1141] envisions very limited jurisdiction over a Chapter 11 case after confirmation of a plan."); *Neptune World Wide Moving, Inc. v. Schneider Moving & Storage Co. (In re Neptune World Wide Moving, Inc.)*, 111 B.R. 457 (Bankr. S.D.N.Y. 1990) (11 U.S.C. § 1141 controls extent to which the court may retain jurisdiction post confirmation; section 1141(b) confers limited post confirmation jurisdiction upon the bankruptcy court for the purpose of implementing the plan.); *In re Aylesbury Inn, Inc.*, 121 B.R. 675 (Bankr. N.D.N.Y. 1990) (court may exercise post confirmation jurisdiction only to the extent retained in the plan and only with respect to matters pending at confirmation.); *Pennsylvania Cos. v. Stone (In re Greenley Energy Holdings of Pa., Inc.)*, 110 B.R. 173 (Bankr. E.D. Pa.1990) (citations omitted) ("since at least 1944, courts have recognized the competing interests between retaining jurisdiction after confirmation until entry of the final decree . . ., and ending the 'tutledge' status of reorganization, a period 'which may limit and hamper [the corporation's] activities and throw doubt on its responsibility."); *In re Iberis Int'l, Inc.*, 72 B.R. 624, 627 (Bankr. W.D. Wis.1986) (court retains jurisdiction over the debtor after confirmation for the limited purpose of insuring that the provisions of the plan of reorganization are carried out).

*In re Refrigerant Reclamation Corp. of Am.*, 186 B.R. at 80-1. That a dispute arises after

confirmation "does not affect analysis of bankruptcy court jurisdiction under 28 U.S.C. § 1334." *Id.*

at 82 (citations omitted).

13

The Sixth Circuit has had many opportunities to address 28 U.S.C. § 1334(b):

[F]or the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between the second, third and fourth categories (proceedings 'arising under,' 'arising in,' and 'related to' a case under title 11). These references operate conjunctively to define the scope of the jurisdiction. Therefore, for purposes of determining section 1334(b) jurisdiction, it is necessary only to determined whether a matter is at least 'related to' the bankruptcy.

*Michigan Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir. 1991) (internal citation omitted).

The test of 'whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.' *Robinson v. Michigan Consol. Gas. Co.*, 918 F.2d 579, 583 (6th Cir. 1990) (emphasis in original) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 991 (3d Cir. 1984)). The proceeding need not be against the debtor or the debtor's property as long as 'the outcome could alter the debtor's rights, liabilities, options or freedom of action. . . .'

*8300 Newburgh Road Partnership v. Time Constr., Inc. (In re Time Constr., Inc.)*, 43 F.3d 1041, 1045 (6th Cir. 1995) (citation omitted). *See also In re Exide Techs.*, 544 F.3d 196, 205–06 (3d Cir. 2008) (test for "related to" jurisdiction is whether "the outcome of th[e] proceeding could conceivably have any effect on the estate being administered in bankruptcy") (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

The Sixth Circuit has also considered the scope of post confirmation bankruptcy court jurisdiction. *See Linsenmeyer v. United States (In re Linsenmeyer)*, 92 F. App'x 101 (6th Cir. 2003); *Gordon Sel-Way, Inc. v. United States*, 270 F.3d 280 (6th Cir. 2001); *In re Wolverine Radio Co.*, 930 F.2d 1132.

The debtor in *Wolverine Radio* confirmed a plan that sold a radio station to Pattern Corporation. Pattern then assigned the radio station to JOSI Broadcasting Company. The Michigan Employment Security Commission ("MESC") advised JOSI that its statutory payments would be set

14

by reference to the debtor's poor payment history. This metric resulted in JOSI's rate being significantly higher than it would have been had MESC set its rate as a new employer.

Debtor returned to the bankruptcy court seeking "enforcement" of its confirmed plan. Concerned that JOSI would assert indemnity rights under the sales contract, the debtor asked the bankruptcy court to enjoin MESC from applying debtor's contribution rate to JOSI. MESC argued lack of subject matter jurisdiction. The Sixth Circuit found "related to" jurisdiction:

> [T]he outcome of this action to determine MESC's authority to transfer the debtor's experience rating to JOSI and to determine JOSI's liability under the Michigan Employment Security Act, . . ., will in no way determine any rights, liabilities, or course of action of the debtor nor affect the debtor's liability under MESA.
>
> However, although [debtor] would not be affected until and unless JOSI invoked the indemnification section of the purchase agreement, we have held that where the parties 'are more intertwined . . . the statute does not require a finding of definite liability of the estate as a condition precedent to holding an action related to a bankruptcy proceedings.' *In re Salem [Mortgage Co.]*, 783 F.2d at 635.

*In re Wolverine Radio Co.*, 930 F.2d at 1143.

In *Gordon Sel-Way*, another liquidating Chapter 11, the debtor sued the IRS to subordinate its tax penalty after confirmation. The bankruptcy court subordinated the penalty, only to be reversed by the district court after an intervening Supreme Court decision. While that appeal was pending, the debtor's assets were liquidated and the proceeds disbursed consistent with the confirmed plan that subordinated the tax penalty claims. *Gordon Sel-Way*, 270 F.3d at 283.

> Once the subordination issue was resolved in favor of the IRS, the bankruptcy court proceeded to address Sel-Way's claim for its FUTA tax refund and the government's claim that it should be able to setoff this refund against the amount of money that it would have received had it been given a pro-rata share of the monies distributed to all other unsecured claims. On September 11, 1998, the bankruptcy court found that the government's claim arose prior to Sel-Way's petition for bankruptcy and that Sel-Way's FUTA tax refund claims arose in 1994 after the petition. The bankruptcy

15

court concluded that the since the government's claim arose pre-petition it could not be set off against Sel-Way's post-petition claim.

*Gordon Sel-Way*, 270 F.3d at 283.

On further appeal, the government argued that the bankruptcy court lacked jurisdiction over this post confirmation matter because it was not provided for in the confirmed plan of reorganization. "The government argue[d] that since Sel-Way's plan of reorganization only provide[d] jurisdiction over controversies 'pending as of the date of confirmation' it [did]not have jurisdiction over Sel-Way's tax refund claim, which arose after confirmation." *Gordon Sel-Way*, 270 F.3d at 288. The Sixth Circuit rejected the government's jurisdictional challenge:

> First, although it is true that some courts have restricted the bankruptcy court's jurisdiction to the plan of reorganization, this practice has been explicitly rejected by others. *See Refrigerant Reclamation Corp. of Am. v. Todack ( In re Refrigerant Reclamation Corp. of Am.)*, 186 B.R. 78, 82 (Bankr.M.D.Tenn.1995) (citing Frank R. Kennedy & Gerald K. Smith, *Postconfirmation Issues: The Effects of Confirmation and Postconfirmation Proceedings*, 44 S.C. L. REV. 621, 632-34 (1993)) ("[S]ince the confirmation of a plan in a Chapter 11 case does not terminate a case, there should be no change in basic jurisdiction of the court. . . .").

> In fact, several courts have held that 11 U.S.C. § 1142 provides bankruptcy courts with broad power to enforce the terms of a confirmed plan. . . . Section 1142(b) states:

>> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution of delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b).

> Under this line of cases, the bankruptcy court would clearly have jurisdiction over this case since the bankruptcy court's resolution of Sel-Way's tax claim and the government's right to setoff is necessary to hasten the consummation of the plan. . . . [T]he district court has pointed out, the resolution of Sel-Way's tax refund

16

claim against the government would either allow the debtor to fulfill its obligations to pay for administrative expenses or to pay the government's class 5 unsecured claims.

Second, assuming that the bankruptcy court's post-confirmation jurisdiction is limited to the plan of reorganization, we believe that Sel-Way's plan provides for post-confirmation jurisdiction in this case. While it is true that Sel-Way's plan of reorganization provides that the bankruptcy court "shall retain jurisdiction to hear and determine any controversy pending as of the date of confirmation" this provision is not exclusive. The plan also stipulates that "the [c]ourt shall further retain jurisdiction to . . . hear and determine all controversies relating to obligations of the Debtor incurred in the conduct of Sel-Way prior to confirmation." . . . Given that the present controversy clearly relates to Sel-Way's federal tax penalties that arose prior to confirmation and payment, we believe that the plan of reorganization provides the bankruptcy court with post-confirmation jurisdiction over this matter.

*Gordon Sel-Way*, 270 F.3d at 288-89.

Finally, in *Linsenmeyer*, the confirmed Chapter 11 plan incorporated a settlement agreement

between the debtors and Monroe Bank & Trust ("MBT"):

Article VII of the Plan provided that "[a]ll property of the Debtors shall revert to the Debtors upon the effective date of this Plan, and their business shall thereafter be conducted by the Debtors, and not be [sic] Debtors-In-Possession." This language tracks the language of 11 U.S.C. § 1141(b), which provides that all estate property reverts to the debtors upon the effective date of the plan of reorganization. The Plan became effective on September 8, 1989.

The Linsenmeyers missed the due date for repaying the MBT loan and, in accordance with the settlement agreement, asked for and were granted a two-month extension. They missed that deadline as well, however, so the bank sold the stock in January 1990. The Linsenmeyers reported the income from that sale on their individual income tax returns for 1990. They have yet to pay the tax.

*Linsenmeyer*, 92 F. App'x at 102.

Ten years later, the debtors moved the bankruptcy court to reopen the Chapter 11 case so that

a trustee could be appointed and directed to file an amended tax return for 1990. The bankruptcy

court denied the motion, the district court and Sixth Circuit affirmed. While the bankruptcy court

17

"retains jurisdiction to ensure that the plan is followed," the plan provided that all property of the estate reverted to the debtors upon the effective date. At the time of MBT's sale, the pledged stock was property of the reorganized debtors alone. "Because the stock was sold after the effective date of the Plan, the resulting tax liability is upon the Linsenmeyers." *Linsenmeyer*, 92 F. App'x at 103.

If a common theme can be extracted from *Wolverine Radio*, *Sel-Way* and *Linsenmeyers*, it is that "related to" jurisdiction in the post confirmation period expands or contracts depending on the relationship between the post confirmation debtor and the defendant, the language of the confirmed plan and the impact the matter will have on performance of the confirmed plan.

Beyond the Sixth Circuit, the courts have struggled to identify the boundaries of bankruptcy court "related to" jurisdiction in the context of post confirmation actions by the reorganized debtor or an entity established to bring those actions. Most agree that "related to" jurisdiction shrinks after confirmation. *See Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005) (When the bankruptcy court has confirmed a plan, "the *Pacor* formulation may be somewhat overbroad."); *In re Resorts Int'l, Inc.*, 372 F.3d at 168-69 (Since there is no longer a bankruptcy estate that can be affected post-confirmation, the bankruptcy court will only exercise jurisdiction when a claim has "a close nexus to the bankruptcy plan or proceeding" and the matter "affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement." ); *U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002) (Citing *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001), the Fifth Circuit "rejected the expansive 'conceivable effect' view of post confirmation jurisdiction for a 'more exacting theory': 'After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for

18

matters pertaining to the implementation and execution of the plan.'"); *Globaleyes Telecommunications, Inc. v. Verizon North, Inc*., 425 B.R. 481, 497-98 (S.D. Ill. 2010) ("In the instant post-confirmation case, the all-important bankruptcy estate no longer exists, so the limits of 'related to' jurisdiction are even more narrow and restrained. . . . [P]ost-confirmation jurisdiction can be exercised by a bankruptcy court only to the extent necessary to interpret or implement the plan."); *Vanguard Prods. Corp. v. Citrin (In re Indicon, Inc.)*, Adv. No. ADV 11-5133, 2012 WL 1110115, *2 (Bankr. D. Ct. Mar. 30, 2012) ("In an adversary proceeding that arises post-confirmation, . . . , a party may 'invoke the authority of the bankruptcy court to exercise post confirmation jurisdiction if the matter has a close nexus to the bankruptcy plan, and the plan provides for the retention of such jurisdiction.'" ) (quoting *Ace Am. Ins. Co. & Pac. Employers Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 448 F. App'x 131, 136, 2011 WL 5924410, *2 (2d Cir. Nov. 29, 2011)); *Premium of Am., LLC v. Sanchez (In re Premium Escrow Servs., Inc.)*, 342 B.R. 390, 396 (Bankr. D. D.C. 2006) ("Prior to the confirmation of a debtor's plan of reorganization, an action to recover funds for the estate easily satisfies the criteria for 'related to' jurisdiction because the recovery of such funds increases the size of the estate and improves the potential for and quantity of distributions to creditors. But 'once confirmation occurs, the bankruptcy court's jurisdiction shrinks,' . . . because '[a]t the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute' once the estate re-vests in the reorganized debtor pursuant to 11 U.S.C. § 1141." (citations omitted); *AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust)*, 335 B.R. 309, 323 (Bankr. D. Del. 2005) ("'After confirmation of a chapter 11 plan, however, the scope of the bankruptcy court's 'related to' jurisdiction diminishes.'") (citation omitted).

Most decisions agree that "related to" jurisdiction requires more than a vague notion that litigation might increase a dividend to creditors under the plan. *See In re Pegasus Gold Corp.*, 394 F.3d at 1194 & n.1 (Rejects argument that there is a close nexus when the proceeding could conceivably increase the recovery to creditors. "As the other circuits have noted, such a rationale could endlessly stretch a Bankruptcy Court's jurisdiction."); *In re Resorts Int'l, Inc.*, 372 F.3d at 170 ("[T]he potential to increase assets of the Litigation Trust and its beneficiaries does not necessarily create a close nexus sufficient to confer 'related to' bankruptcy court jurisdiction post-confirmation." "[I]f the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant. Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended for non-Article III bankruptcy courts." ); *Hollingshead v. Sahni (In re National Found. for Housing)*, No. CV 10-1527-JST, 2011 WL 320979 (C.D. Cal. Jan. 27, 2011) (Citing *Sea Hawk Seafoods, Inc. v. Alaska ( In re Valdez Fisheries Dev. Ass'n, Inc.)*, 439 F.3d 545, 548 (9th Cir. 2006), the Ninth Circuit "has explicitly rejected the argument that there is a close nexus when the proceeding could conceivably increase the recovery to creditors."); *BWI Liquidating Corp. v. Rialto (In re BWI Liquidating Corp.)*, 437 B.R. 160 (Bankr. D. Del. 2010) ("[T]he mere potential to increase the assets of the trust is insufficient to establish a close nexus."). *But see Boston Regional Med. Ctr., Inc. v. Reynolds (In re Boston Regional Med. Ctr., Inc.)*, 410 F.3d 100 (1st Cir. 2005) (Reorganized debtor's purpose was to liquidate assets and make distributions pursuant to the plan; success in a post confirmation action will directly impact the amount of the  dividend.).

Some courts have offered factors to assess "related to" jurisdiction. *See In re Blast Energy Servs., Inc.*, 396 B.R. 676 (Bankr. S.D. Tex. 2008) (factors relevant to post confirmation subject

matter jurisdiction: (1) when the claim at issue arose; (2) what provisions in the confirmed plan exist for resolving disputes and whether there are provisions in the plan retaining jurisdiction for trying these suits; (3) whether the plan has been substantially consummated; (4) the nature of the parties involved; (5) whether state law or bankruptcy law applies; and (6) indices of forum shopping.) (citing *Gilbane Building Co. v. Air Sys. Inc. (In re Encompass Servs. Corp.)*, 337 B.R. 864, 873–77 (Bankr. S.D. Tex. 2006)). In *BWI Liquidating Corp. v. Rialto (In re BWI Liquidating Corp.)*, 437 B.R. 160 (Bankr. D. Del. 2010), the bankruptcy court complied this impressive list of considerations:

> [T]he timing of the conduct alleged in the complaint is not a factor to be considered in determining whether there is a close nexus. . . .  Plan provisions that purport to preserve the bankruptcy court's jurisdiction are not alone sufficient to establish post-confirmation jurisdiction; instead the court must determine whether 'a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan. . . .' A 'close nexus'  may be found where the plan specifically enumerates the cause of action.  To find a sufficiently close nexus, the plan must 'specifically describe[ ] an action over which the Court had 'related to' jurisdiction pre-confirmation and expressly provide[] for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors. . . .'  Such specific language helps ensure that 'bankruptcy court jurisdiction would not raise the specter of unending jurisdiction' post-confirmation. . . . [A] Plan must specifically describe a cause of action in order to retain 'related to' jurisdiction. . . . [T]he rest of the creditors who voted on the Plan had no specific knowledge of the claims.  The Court concludes that where, as here, the Plan only broadly provided for retention of jurisdiction over causes of action, it provides no evidence of a sufficiently close nexus with the bankruptcy proceeding to support post-confirmation jurisdiction. . . . The Court must weigh the potential to increase recovery for creditors with other contributing factors, including whether the suit is post-confirmation and its relatedness to the Plan. . . . [T]his adversary proceeding was filed post-confirmation and is unrelated to any specific provision of the Plan. . . . [T]he mere potential to increase the assets of the trust is insufficient to establish a close nexus.

*In re BWI Liquidating Corp.)*, 437 B.R. 165-68.  *See also Valley Historic Limited Partnership v. Bank of New York*, 486 F.3d 831, 836-37 (4th Cir. 2007) (Bankruptcy court lacked jurisdiction over post confirmation adversary proceeding against bank for breach of contract and tortious interference.

Plan did not provide for use of any recovery. Plan was substantially consummated. Neither the plan nor the order confirming the plan provided that the actions would remain property of the bankruptcy estate.).

In this case, six months after confirmation, a reorganized debtor sues two noncreditors on state law and contract claims. These disputes arose prior to confirmation, but are nowhere referenced in either the Amended Plan or Disclosure Statement.

The creditors secured by equipment damaged by the 2010 flood for which Fireman's has denied coverage will not be affected by the outcome of this litigation. Under the Amended Plan, every creditor secured by equipment will be paid in full without regard to EFI's receipt of insurance proceeds. (*See* Amended Plan, § 5.1, at 5-12.) The payment terms of creditors secured by EFI's equipment will not be altered by the receipt or nonreceipt of insurance proceeds or other damages in this litigation. The financial projections submitted with the Amended Plan show no dependence and make no provision for insurance proceeds.

The Amended Plan vests all estate property in the Reorganized Debtor upon confirmation. After confirmation no bankruptcy estate existed nor was any trust or fund established to be administered for the benefit of EFI's creditors. Payments under the confirmed plan were dependent solely on the post confirmation operations of reorganized EFI.

This action does not ask the bankruptcy court to interpret, construe, enforce or implement EFI's Amended Plan. Nor can it be said that this proceeding will affect the rights of any creditor under the confirmed plan. Under any construct of post confirmation jurisdiction embraced by the courts, this adversary proceeding lies beyond bankruptcy court subject matter jurisdiction.

22

### IV. Conclusion

This court lacks subject matter jurisdiction over this adversary proceeding because it is not "related to" EFI's bankruptcy case for purposes of 28 U.S.C. § 1334(b). EFI's complaint must be dismissed.

And appropriate Order will be entered.

This Order has Been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.